IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Michael T. Kelly, | ) | Case No. 11-48801 |
| Debtor | ) | |
| | ) | Chapter 7 (converted from Ch.13) |
| | ) | |
| | ) | Judge Hollis |
| | ) | |

CREDITOR'S OBJECTION TO PORTIONS
OF TRUSTEE'S FINAL REPORT (DOC. #228)

Now comes Creditor Arthur G. Jaros, Jr. ("Objector") objecting to portions of the Trustee's Final Report (Doc. #228) as follows.

**Objection A: Joint Bank Account**

Objection is made with respect to Reference # 7 that "½ of the value" on Debtor's Second Amended Schedule C (doc #128) "belongs to spouse" and therefore there is no indication that any effort was made to collect $1,735.34 in cash for the benefit of the estate and instead left the Debtor with a windfall.  To wit, the original Schedule B (Doc. #22) filed by Debtor and his wife listed a joint checking account in the amount of $3,470.68 and Schedule C, as originally filed, claimed no exemption therefor (doc #22, 12/19/2011).  On January 30, 2012, the spouse's case was dismissed and the Debtor's case converted to Chapter 7.  On February 6, 2012, the Debtor filed certain amended schedules (Doc. #47) Certain schedule were amended a second time on July 27, 2012 (Doc. #128).  Amended and Second Amended Schedule B reported only one-half the amount of the joint checking account, apparently on the theory that the law of joint tenancy applies.  The law in Illinois

governing joint bank accounts is contrary to the Debtor's reporting and the trustee's acceptance of that treatment (765 ILCS 1005/2(a); *Tucker*, 430 B.R. 499 (Bankr. N.D. Ill. 2010)).  That is and as *Tucker* points out, because either account co-holder may withdraw any funds in a joint account at any time (rather than just one-half), the presumption is that each owner "owns all funds in that account."  Moreover, Schedule I of Debtor's Schedules shows that approximately 98% of all of the average monthly disposable income of the Debtor and his wife is earned by the Debtor. Therefore, it is nearly certain that all of the funds in the joint bank account were the result of Debtor's own earnings.

**Objection B:** Cash Security Deposit

Debtor's Second Amended Schedule B (Doc 128) lists $1,372.50 as a security deposit for which no exemption is claimed on Schedule C.  The Trustee's report states that this item was used by the Debtor for rent where the law required the Debtor to turnover this non-exempt asset, either by assignment or by cash payment to the Trustee.   If Debtor desired to retain the use of the security deposit, then a sufficient portion of the wildcard exemption should have been allocated thereto but with the result that the use of the wildcard exemption to shield other assets would have been and should have been reduced.

**Objection C:** Chapter 13 Period Earnings (and any other Chapter 13 Period Accretions)

There is ample indicia that the Debtor converted his Chapter 13 case to one under Chapter 7 in order to not only to properly avoid having to contribute his future disposable earnings to the Chapter 13 plan administration process but to improperly retain and/or use non-exempt property (that he would properly have been allowed to retain in Chapter 13) but that was instead required to be surrendered

to the Trustee under his conversion to Chapter 7.   This unlawful failure to turn over non-exempt property included at a minimum the items described in Objections A and B, above, but also appear to include other items of tangible personal property listed on the Trustee's Final Report as Reference Numbers 9-12[1].  Where the Debtor converts his case to Chapter 7 from Chapter 13  intending to improperly retain non-exempt property that he was properly allowed to retain under Chapter 13 while seeking to avoid Chapter 13 plan payments, such conversion is in bad faith.   Accordingly the property of the estate is measured as of the date of conversion rather than as if the petition date (11 U.S.C. Section 348(f)(2)) and includes the earnings of the Debtor from the petition date to the conversion date (11 U. S. C. Section 1306(a)).   The Trustee's Final Report does not indicate any effort to demand and/or collect the Debtor's earnings during the chapter 13 period that are property of the estate under Section 1306(a)(2) and objection is therefore made to the Trustee' Final Report and to closing of the estate in this regard.

    WHEREFORE, Objector objects to the Trustee's Final Report to the extent aforesaid.

    Respectfully submitted,

       /s/ Arthur G. Jaros, Jr.

Arthur G. Jaros, Jr.
The Law Office of Arthur G. Jaros, Jr.
1200 Harger Road - Suite #830
Oak Brook, Illinois  60523
(630) 574-0525

---

[1] In addition, the undersigned is informed and believes that the Debtor, rather than surrendering possession of the MG Midget (Ref. #15) or retaining possession pending resolution with the trustee, unilaterally transferred possession during the pendency of this Chapter 7 proceeding to his father-in-law without first procuring the approval of the trustee.